```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
GREGORY HARVEY,                         :
                        Plaintiff,      :
                                        :     09 Civ. 6310 (DLC)
            -v-                         :
                                        :     OPINION & ORDER
DR. HALKO, DR. BOTCHI, and APS HEALTH   :
ORGANIZATION,                           :
                        Defendants.     :
                                        :
----------------------------------------X
```

Appearances:

For plaintiff:
Gregory Harvey, pro se
07-A-3479
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

For defendants Dr. Halko and Dr. Botchi:
Inna Reznik
Attorney General of the State of New York
120 Broadway
New York, NY 10271

For defendant APS Health Organization:
Michael Patrick Kelly
Schiavetti, Corgan, Soscia, DiEdwards & Nicholson,LLP(WPl)
709 Westchester Avenue, Suite 205
White Plains, NY 10604

James Patrick Connors
Kevin Michael Ryan, II
Jones Hirsch Connors & Bull P.C.
One Battery Park Plaza
New York, NY 10004

DENISE COTE, District Judge:

Plaintiff Gregory Harvey ("Harvey"), proceeding <u>pro se</u>, brings this § 1983 action against doctors Halko ("Halko") and Bakshi ("Bakshi"),[1] staff physicians at Sing Sing Correctional Facility ("Sing Sing"), and APS Health Organization ("APS"), a health care services referral management organization, alleging deliberate indifference to his serious knee injury in violation of the Eighth Amendment.  The defendants have moved for summary judgment.  For the following reasons, the motion is granted.

BACKGROUND

Except where noted, the following facts are undisputed. Prior to his incarceration in 2006, Harvey was the producer and host of a successful cable fitness show, Awesome Bodies by Greg. Harvey alleges that on June 21, 2007 he was assaulted by security guards at the Clinton Correctional Facility in New York State and sustained an injury to his left knee.  Harvey was subsequently transferred to Sing Sing and was first examined by Halko on July 24, 2007.  Halko diagnosed Harvey as having swelling, tenderness, and a mild effusion, or accumulation of excess fluid, in his left knee.  Halko notes that based on his experience with knee injuries, he "considered [Harvey's] left

---

[1] Bakshi's name is spelled "Botchi" in the complaint and caption. The correct spelling, as indicated in Bakshi's declaration, is "Bakshi."

2

knee injury minor.  His knee was not bleeding and was only mildly swollen."  Halko prescribed the anti-inflammatory medication Naprosyn; he also directed Harvey to wear a knee brace and issued passes giving Harvey permission to use a cane for walking, to shower on the same floor as his cell block, and to remain on the first floor of his housing block.  Halko noted that if Harvey's knee pain did not improve after one month, an MRI should be scheduled.

   Harvey requested medical attention for his left foot and his blood pressure and was examined by a nurse several times during the month that followed.  On August 21, 2007, Harvey was examined by Bakshi; he again complained of pain and swelling in his left knee.  Bakshi renewed the prescription for Naprosyn, prescribed physical therapy, and noted that an MRI and orthopedic consult might be necessary.  On September 10, 2007, Bakshi again examined Harvey, who requested an MRI for his left knee.  Bakshi requested that Harvey be referred for an orthopedic consultation for pain in his left knee and back foot.  APS, which contracts with the New York State Department of Correctional Services to evaluate medical referrals by prison staff, denied the referral request on September 26, 2007; it recommended a course of physical therapy before Harvey was referred to an orthopedic specialist.

Despite Bakshi's prescription of physical therapy at the September 2007 visit, Harvey did not begin physical therapy treatment until February 2009.  On April 30, 2008, Harvey was transferred from Sing Sing to the New York Psychiatric Center in Marcy, New York, where he was diagnosed with severe bipolar disorder.  Harvey was readmitted to Sing Sing on September 10, 2008.  An X-ray of Harvey's knee was performed in November 2008, which revealed a bone spur on Harvey's patella, a flat triangular bone located at the front of the knee joint.  APS again denied a nurse's referral request for an orthopedic specialist in January of 2009, reasoning that Harvey had just begun physical therapy and that it should be given time to take effect before a referral to a specialist was made.  Harvey received physical therapy for his left knee through June of 2009.

Harvey met with an orthopedic specialist in July of 2009.  The specialist indicated that physical therapy and the use of a knee brace was the best course of treatment for Harvey's knee injury.  Harvey testified that although the use of the knee brace had brought him some relief, the pain persists in his left knee and he is unable to do many of the physical fitness stunts that he performed on his fitness show prior to his incarceration.

Harvey filed his complaint (the "Complaint") on July 15, 2009.  The Complaint asserts that APS' denial of the two orthopedic referral requests and Halko and Bakshi's delay in ordering an X-ray of Harvey's knee constituted deliberate indifference to Harvey's knee injury in violation of the Eighth Amendment.  Harvey seeks compensatory and punitive damages for the permanent injury to his knee that he claims resulted from the defendants' failure to provide him with adequate medical care.  On October 28, 2010, APS filed a motion for summary judgment and for judgment on the pleadings.  Bakshi and Halko filed a motion for summary judgment on November 10, 2010.  The motions were fully submitted on February 11, 2011.

## DISCUSSION

The defendants argue that they are entitled to summary judgment because Harvey has failed to present any genuine issue of material fact suggesting that the defendants were deliberately indifferent to his medical needs.  Defendants further argue that they are entitled to qualified immunity.  In addition, APS argues that it was not acting under color of state law in reviewing the referral requests.  Because Harvey has not shown that the defendants were deliberately indifferent to his medical needs, it is not necessary to address these other defenses.

Summary judgment is "'appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.'"  Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC, 628 F.3d 46, 51 (2d Cir. 2010) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).  "The role of the court in deciding a motion for summary judgment 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'" Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 59-60 (2d Cir. 2010) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986)).

Although the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care, it is well-established that "not every lapse in medical care is a constitutional wrong."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citation omitted).  Rather, a prison official is held to have violated the Eighth Amendment only when the alleged deprivation is shown to be "sufficiently serious" and the prisoner demonstrates that the charged official acted "with a sufficiently culpable state of mind."  Id. at 279-80 (citation omitted).

6

To determine whether a deprivation of medical care is "sufficiently serious," a court must first ask "whether the prisoner was actually deprived of adequate medical care." Id. "As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." Id. (citing Farmer, 511 U.S. at 844-47). An inmate is not entitled to treatment by every available medical alternative as long as his treatment is reasonable. Estelle v. Gamble, 429 U.S. 97, 107 (1976). Furthermore, a "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

A court must also inquire as to "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467 F.3d at 280 (citation omitted). If the inadequacy at issue is "a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious." Id. If, however, "the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." Id. Then, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather

7

than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).  Even in cases where an inmate "suffers from an admittedly serious medical condition," if the alleged deficiencies in treatment are "minor and inconsequential," those lapses will not sustain an Eighth Amendment claim.  Id.  "[T]he actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  Id. at 187.

     The second requirement for an Eighth Amendment violation is subjective:  the prison official must act with a "sufficiently culpable state of mind."  Salahuddin, 467 F.3d at 280 (citation omitted); see also Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009).  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law."  Salahuddin, 467 F.3d at 280 (citation omitted).  "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  Id. (citation omitted).  This means that the prison official "must be subjectively aware that his conduct creates such a risk."  Id. at 281 (citation omitted).

Harvey has failed to show that the deprivation of medical care for his knee injury was sufficiently serious.  Harvey acknowledges that Halko and Bakshi prescribed a course of treatment for his knee injury which included the prescription of an anti-inflammatory drug to ease the swelling in his knee and the use of a knee brace to make walking less painful.  Although APS denied Bakshi's request for a referral to an orthopedic specialist, it did so because it determined that another course of treatment, physical therapy, should be given prior to a visit to a specialist.  Harvey eventually received physical therapy in early 2009, and the delay in initiating this course of treatment can be ascribed in part to Harvey's April 2008 transfer to a psychiatric center.  In addition, Harvey testified that when he eventually met with the orthopedic specialist in July of 2009, the specialist told him that there was nothing more that could be done for his type of injury.  Thus, Harvey has not shown that the delay in meeting with the orthopedic specialist caused him harm.

Against this medical treatment history, Harvey's claims essentially amount to a disagreement over the course of treatment dictated by the defendants.  Harvey asserts that he should have been referred to an orthopedic specialist and that he should have been given an X-ray for his knee injury prior to November 2008.  As noted above, a prisoner is only entitled to

9

receive reasonable medical care; he is not entitled to treatment by every available medical alternative.

Moreover, there has been no showing that the defendants acted with a sufficiently culpable state of mind. Halko and Bakshi prescribed what they determined to be an adequate course of treatment for what Halko considered a relatively "minor" knee injury. And although APS denied the two referral requests for an orthopedic specialist, it did so with the understanding that Harvey would be receiving an alternative course of treatment, physical therapy, in addition to the anti-inflammatory drug prescribed by Halko and Bakshi. Thus, the defendants did not act with knowledge of a substantial risk that serious harm to Harvey would result from their chosen course of treatment.

## CONCLUSION

APS's October 28, 2010 motion for summary judgment and Halko and Bakshi's November 10, 2010 motion for summary judgment are granted. The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated:     April 15, 2011
           New York, New York

                              /s/ Denise Cote
                         ─────────────────────────────
                              DENISE COTE
                         United States District Judge

COPIES MAILED TO:

Gregory Harvey
07-A-3479
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Inna Reznik
Office of the Attorney General of the State of New York
120 Broadway
New York, NY  10271-0332

Kevin M. Ryan
James Connors
Jones Hirsch Connors and Bull, P.C
One Battery Park Plaza
New York, NY 10004